IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAHDI SADEGHI | No.  1:24-cr-10391-IT |

**DEFENDANT MAHDI SADEGHI'S MOTION IN LIMINE
TO EXCLUDE LEGAL OPINION EVIDENCE REGARDING EXPORT CONTROLS**

Pursuant to Fed. R. Evid. 401, 403, 701, 702 and 703, Defendant Mahdi Sadeghi respectfully requests that this Court exclude all legal opinion evidence about export controls, including but not limited to "expert" or other testimony from proffered government expert Jeremy Krizek, about the (1) scope and meaning of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*; the Iran Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560; and/or the Export Administration Regulations ("EAR"), 15 C.F.R. Part 730; (2) the purpose(s) of those laws and regulations; and/or (3) their application to the alleged "technology" or "goods" at issue in this case, including MEMS sensors.

**BACKGROUND**

On January 31, 2026, the prosecution served a "Notice of Expert Witness" concerning Jeremy Krizek, a Senior Enforcement Investigations Coordinator with the U.S. Department of the Treasury, Office of Foreign Asset Control ("OFAC"). *See* Exhibit A ("Krizek Notice"). Although the prosecution "does not concede" that Krizek will provide "expert" testimony, its Notice vaguely states he will generally "explain how a sanctions program works," including that "typically, a sanctions program is established via an Executive Order to address a national emergency," that "a sanctions program typically involves prohibitions, exemptions, and authorizations," and that

1

"OFAC has the authority under IEEPA to issue individual licenses." Krizek Notice at 2-3. Regarding "the Iran sanctions program" in particular, the Notice states Krizek will "describe" the legal framework of "prohibitions, restrictions, and requirements," the legislative and regulatory history of ITSR, and the purpose of those sanctions—that is, "why OFAC implements sanctions on Iran in furtherance of U.S. national security interests." *Id.* at 3. Specifically, the Notice states that Krizek will opine that "the President declared a national emergency" concerning "the Government of Iran," which the Notice asserts has supported "international terrorism," "undermine[d] the Middle East peace process," and tried to "acquire weapons of mass destruction." *Id.* Finally, the Notice states that Krizek will testify, purportedly as a "fact witness" and based on his "personal knowledge," that various individuals and entities, including co-Defendant Mohammed Abedini, Illumove S.A., Tacit Motion, Inc., and SDRA never applied for an OFAC license but that Mr. Sadeghi was issued an OFAC license, on or about August 7, 2020, to send approximately $1,600 to Iran.

## ARGUMENT

### I.    The Krizek Notice fails to satisfy Rule 16(a)(1)(G).

To the extent that Krizek will testify as an expert regarding IEEPA, ITSR, OFAC, or related subjects, relying on his specialized training and experience regarding those export controls, the Notice fails, for several reasons, to comply with Fed. R. Crim. P. 16(a)(1)(G), which requires "a written summary of testimony" which "must describe the witness's opinions" and their "bases and reasons."

An expert disclosure is deficient if "[t]he government's notice provide[s] a list of the general subject matters to be covered, but d[oes] not identify what opinion the expert would offer on those subjects." *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001); *United States v. Capleton*, 199 F.R.D. 25, 27 (D. Mass. 2001) ("Here, the government has notified the Defendant

2

of little more than the subject matter of [the expert's] testimony."). The Krizek Notice provides only an abstract summary of the topics of Krizek's anticipated testimony.

"Even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, it may be excluded if [the disclosing party] 'has made no attempt at all to describe the bases and reasons for those opinions as required by [Rule 16(a)(1)(G)].'" *United States v. Mahaffy*, No. 05-cr-613 (ILG), 2007 U.S. Dist. LEXIS 30077, at *8 (E.D.N.Y. Apr. 24, 2007) (quoting *United States v. Wilson*, 493 F. Supp. 2d 484 (E.D.N.Y. 2006) ("It is well-settled that a court may in its discretion preclude expert examination . . . regarding topics or opinions not properly disclosed.")). Here, the Krizek Notice fails to describe the "bases and reasons" for any of his particular opinions.

For example, the Notice does not explain the implicit suggestion that, as a legal matter, foreign individuals and entities outside the U.S. (*e.g.*, Abedini and Illumove) are, nevertheless, required to apply for and/or obtain OFAC licenses to do business with individuals or companies in the U.S. Nor does it say anything—the substance, basis, or reasons—for any potential opinion that Krizek might offer about whether the IEEPA, ITSR, or any other export controls, such as the Export Administration Regulations ("EAR"), apply to the MEMS, datasheets or other alleged "technology" or "goods" at issue in this case.

The prosecution cannot sidestep the disclosure requirements for expert witnesses by asserting that Krizek reviewed relevant documents to form his "lay opinion" as a "fact" witness. A lay opinion must be based on the witness's own "perception." Fed. R. Evid. 701(a). Here, the use of specialized or technical expertise to conduct a post-hoc review of some selection of OFAC documents regarding the alleged conduct in this case is precisely what makes Krizek an expert witness. *See United States v. Horsley*, 105 F.4th 193, 220 (4th Cir. 2024) (citing *United States v.*

*Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (distinguishing expert opinions based on "second-hand information" from "foundational personal perception needed under Rule 701" for lay opinions)). It appears that Krizek was not a percipient witness to any of the alleged conduct (*i.e.*, he was not involved in reviewing any relevant licensing applications, making any relevant licensing determinations, or even conducting any OFAC investigation prior to the Indictment in this case). Nothing in the Notice establishes otherwise.

## II.       Only the Court can instruct the jury on the law.

Neither Krizek nor any other government witness can testify, in any capacity, to what the IEEPA, ITSR, or EAR generally permit or prohibit. Only this Court can instruct the jury on the relevant laws and regulations, and no witness—even an expert witness with specialized knowledge or training about export controls—may usurp that judicial role. *See* Fed. R. Evid. 702, 703.

"Expert testimony proffered solely to establish the meaning of a law is presumptively improper." *United States v. Mikutowicz*, 365 F.3d 65, 73 (1st Cir. 2004) (citing *Nieves-Villaneuva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) ("In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge.")). "The judge's knowledge of the law makes an expert's legal opinion at best cumulative and at worst prejudicial when presented to the jury." *Moral v. UBS Fin. Servs.*, No. 08-1833 (PAD), 2014 U.S. Dist. LEXIS 203633, at \*5-6 (D.P.R. Dec. 3, 2014).

Thus, the prosecution may not call a witness to summarize, explain, and interpret the IEEPA, ITSR or EAR. Nor may any government witness recite definitions of relevant terms, such as "technology" or "information," directly from the Code of Federal Regulations, much less suggest his or her own definitions.

## III.      Testimony about "typical sanctions programs" is irrelevant.

Regardless of whether Krizek were to testify as an expert or fact witness, any generic

testimony about a "typical" sanctions program, as opposed to the Iran Transactions and Sanctions Regulations, the only program that is relevant to the alleged offense conduct, would be irrelevant, *see* Fed. R. Evid. 401, and its probative value, if any, would be substantially outweighed by the risk of confusion for the jury, *see* Fed. R. Evid. 403.

**IV.   Testimony about the role of U.S. export controls in protecting national security or preventing foreign terrorism is unfairly prejudicial.**

Any testimony, especially opinion evidence from an expert witness, that the IEEPA, ITSR, or other U.S. export controls were established to protect U.S. national security or prevent foreign terrorism would not only be irrelevant, *see* Fed. R. Evid. 40, but its probative value (if any) would also be substantially outweighed by the risk of unfair prejudice to Mr. Sadeghi, *see* Fed. R. Evid. 403. In a drug prosecution, for example, the prosecution is not permitted to call a DEA witness to testify about the history of the drug war and the dangers of fentanyl, heroin or cocaine. Here, Mr. Sadeghi is *not* charged in any terrorism counts (Counts 9 and 10), and there is no evidence that he knowingly and willfully assisted Iranian officials to obtain U.S. technology, much less to use such technology in any attacks on U.S. forces. Indeed, as the prosecution knows, Mr. Sadeghi does not support the current Iranian regime, and as a pacifist, he never sought to assist with military operations of any kind. This case must turn on the actual facts regarding Mr. Sadeghi—what he did, what he knew, what he intended—not on the underlying policies or concerns that may have motivated Congress to enact the IEEPA of OFAC to promulgate the ITSR.

## CONCLUSION

Accordingly, Mr. Sadeghi respectfully requests that this Court exclude legal evidence about (1) the scope and meaning of U.S. export controls (2) the purpose(s) of those laws and regulations; and/or (3) their purported application to the alleged "technology" or "goods" at issue in this case.

Respectfully submitted,

**MAHDI SADEGHI**

by his attorneys,

*/s/ William W. Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

## LOCAL RULE 7.1 CERTIFICATION

Defense counsel certify that they conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein.

*/s/ William W. Fick*

## CERTIFICATE OF SERVICE

I, William W. Fick, hereby certify that on February 6, 2026, I caused this document to be filed through the ECF system.

*/s/ William W. Fick*

6