IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAHDI SADEGHI | No.  1:24-cr-10391-IT |

### DEFENDANT MAHDI SADEGHI'S MOTION IN LIMINE TO PLAY COURT-DEVELOPED EDUCATIONAL VIDEO CONCERNING UNCONSCIOUS BIAS TO PROSPECTIVE JURORS

Defendant Mahdi Sadeghi respectfully requests that, prior to the empanelment process, prospective jurors in this case be shown an 11-minute educational video concerning unconscious or "implicit" bias that was developed for use in jury selection by the United States District Court for the Western District of Washington, available at this link: https://www.wawd.uscourts.gov/jury/unconscious-bias.

### BACKGROUND

As the Court knows, this case involves charges that Mr. Sadeghi willfully exported "goods" or "technology" from the United States to Iran through his co-Defendant Mohammed Abedini in Switzerland and that he conspired with Abedini to do so.

The government contends that Abedini, who now lives in Iran, is not in custody, and will not appear for trial, has business connections to the Iranian regime and, specifically, to its Islamic Revolutionary Guard Corp. ("IRGC"), which the U.S. government has designated as a foreign terrorist organization.

For his part, Mr. Sadeghi is dual citizen of the United States and Iran. Although he was born and raised in Iran, he moved to this country in 2007, obtained his Ph.D. in electronic engineering in this country, and became a naturalized citizen in 2020. Mr. Sadeghi has raised his

own family in the U.S., but members of his extended family, including his parents still live in Iran.

## ARGUMENT

**I.      A fair trial requires an impartial jury.**

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury* of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI (emphasis added). Thus, an impartial jury is a core requirement of a constitutional jury trial. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." (internal citations omitted)). "An impartial jury is one 'capable and willing to decide the case solely on the evidence before it," and free from any potential prejudice or bias against either party. *Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013) (internal quotations omitted)).

**II.     Bias against Iran—and Iranian-Americans like Mr. Sadeghi—is a problem in the U.S.**

Scholars have recognized that, "[t]hough categorized as 'white' by the US census, many Iranian Americans remain marginalized, and experience racial and political stigma." S. Sadeghi, "Conditional Belonging: The Racialization of Iranians in the Wake of Anti-Muslim Politics," Public Lecture at Muhlenberg College (Feb. 28, 2024); *see also* The Public Affairs Alliance of Iranian Americans, "National Public Opinion Survey" (2025) (reporting that "[m]ore than half of Iranian Americans (53%) say they or someone close to them has experienced discrimination in the U.S. because of their ethnicity or national origin"); *id.* at 8 (noting "long-term upward trend" of discrimination against Iranian-Americans").

The risk that implicit bias against Mr. Sadeghi, as an Iranian American, is especially pronounced in this case, which involves allegations of ties to Iranian regime and its Islamic

Revolutionary Guard Corp. Polling data indicates that almost 80% of people in the U.S. have an unfavorable or negative view of Iran. *See* M. Mordecai, "Iran widely criticized in 14 advanced economies," Pew Research Center (Dec. 2, 2020). It is likely that such sentiment has gotten even worse in light of the recent war between Iran, Israel and the U.S.; on-going tensions between the three countries, and the recent widely publicized protest movement in Iran, which the regime has forcibly suppressed. *See, e.g.*, G. Jaffe, "U.S. Fighter Jet Shoots Down Iranian Drone Amid Heighten Tensions," The New York Times (Feb. 3, 2026) (reporting on the "build[] up" of U.S. forces in anticipation of "a possible confrontation with Iran"), *available at* https://www.nytimes.com/2026/02/03/us/politics/us-iran-drone-downing.html .

### III.    The educational video can help to minimize the risk of implicit bias.

Even if thorough voir dire might identify and disqualify prospective jurors who candidly acknowledge their biases, the problem of implicit bias remains. "Implicit bias" is a term of art referring to the formation of opinions based on "relatively unconscious and relatively automatic features of prejudiced judgment and social behavior." *See* M. Brownstein, "Implicit Bias," *The Stanford Encyclopedia of Philosophy* (Spring 2017 Edition).[1] In other words, implicit bias draws conclusions based on pre-formed opinions rather than the evidence presented. In terms of juror impartiality, "[t]he theory of the law is that a juror who has formed an opinion cannot be impartial." *Morgan*, 504 U.S. at 727 (internal citation omitted). Thus, drawing any conclusion about a defendant or case on the basis of "implicit bias" would contravene the Sixth Amendment's core principle of juror impartiality.

The research group, Perception Institute[2], offers the following definition of "implicit bias"

---

[1] *Available at* https://plato.stanford.edu/entries/implicit-bias.

[2] The Perception Institute is a national consortium of social scientists, law professors, and advocates focusing on the role of the mind sciences in law, policy, and institutional practices. Its

in the context of race and ethnicity:

> Thoughts and feelings are "implicit" if we are unaware of them or mistaken about their nature. We have a bias when, rather than being neutral, we have a preference for (or aversion to) a person or group of people. Thus, we use the term "implicit bias" to describe when we have attitudes towards people or associate stereotypes with them without our conscious knowledge. A fairly commonplace example of this is seen in studies that show that white people will frequently associate criminality with black people without even realizing they're doing it.[3]

The Sixth Circuit has similarly explained the concept this way:

> The concept of "implicit bias" is defined, generally, as bias that is "not necessarily openly and explicitly expressed, but [is] harbored nonetheless." Implicit biases are "often not conscious, intentional, or maliciously-based," as opposed to explicit bias – generally defined as "bias that is openly expressed."

*United States v. Ray*, 803 F.3d 244, 260-61 (6th Cir. 2015).

This emerging social science serves to highlight something about which the courts have long been aware: that unconscious bias about race or ethnicity could affect the outcome of trials. *See Smith v. Phillips*, 455 U.S. 209, 221-222 (1982) (O'Connor, J., concurring) ("Determining whether a juror is biased or has prejudged a case is difficult because the juror may be … unaware of it."); *Georgia v. McCollum*, 505 U.S. 42, 68 (1992) (O'Connor, J., dissenting) ("[C]onscious and unconscious racism can affect the way white jurors perceive minority defendants and the facts presented at their trials, perhaps determining the verdict of guilt or innocence.").

Studies reflects that people can combat the effect of implicit biases if they are aware that unconscious associations can exist and consciously examine whether such associations may play

---

cofounders are Alexis McGill Johnson, of Princeton and Yale Universities, and Rachel Godsil, of Seton Hall University School of Law, a renowned author and lecturer on issues of implicit bias and racial anxiety. *See* https://perception.org/about-us/team/.

[3] https://perception.org/research/implicit-bias.

a role in their decisions.[4] For this reason, the U.S. District Court for the Western District of Washington actively educates all prospective jurors to do just that. The court does so by showing an 11-minute video as a routine part of juror orientation. The video explains what implicit biases are and instructs jurors to guard against drawing inferences or conclusions based on them by taking three simple steps: (1) being aware that implicit biases exist, (2) carefully examining their own decision-making process, and (3) asking whether their decision(s) would be different if the witness, lawyer, or person on trial were of a different race, age, or gender.

**IV.    Other sessions of this Court have used the video in criminal cases involving similar concerns.**

Multiple sessions of this Court have agreed to play this video for prospective jurors at the request of defendants. *See, e.g.*, *United States v. Yu*, No. 19-cr-10195-WGY, D.E. 215; *United States v. Castro*, No. 19-cr-10363-LTS, D.E. 236; *United States v. Omoruyi*, No. 21-cr-10217-PBS, D.E. 153. In addition, undersigned counsel understand that the court decided *sua sponte* to play the video to jurors in *United States v. Bigda*, No. 18-cr-30051-MGM.

<strong><u>CONCLUSION</u></strong>

Accordingly, Mr. Sadeghi respectfully requests this Court show the venire in this case the video on implicit bias that the Western District of Washington created to ensure juror impartiality.

---

[4] *See, e.g.*, Hon. Jeremy D. Fogel, *Mindfulness and Judging* (2016), *available at* https://fjc.dcn/content/345454/court-web-discussion-implicit-bias; *see also* E. Ingriselli. *Mitigating Jurors' Racial Biases: The Effects of Content and Timing of Jury Instructions*, 124 Yale L.J. 1690, 1729-30 (March 2015) (examining hypotheses for combatting racially driven decisions in jurors and concluding that "judges should include debiasing elements derived from [implicit bias] theory in their jury instructions and . . . they should present these instructions before the evidence phase of a trial" because "presenting instructions before evidence leads to lower biases").

Respectfully submitted,

**MAHDI SADEGHI**

by his attorneys,

*/s/ William W. Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*


## LOCAL RULE 7.1 CERTIFICATION

Defense counsel certify that they conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein.

*/s/ William W. Fick*


## CERTIFICATE OF SERVICE

I, Wiliam W. Fick, hereby certify that on February 6, 2026, I caused this document to be filed through the ECF system.

*/s/ William W. Fick*

6