UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>MAHDI MOHAMMAD SADEGHI,<br>a/k/a MOHAMMAD MAHDI SADEGHI<br><br>Defendant. | No. 1:24-CR-10391-IT |

## GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE INFORMATION RELATED TO DEFENDANT BRINGING A LAPTOP TO IRAN

The United States of America hereby respectfully moves *in limine* for an order precluding the defense from offering certain evidence and argument regarding defendant Mahdi Sadeghi's discussion with a representative of his then-employer Analog Devices, Inc. ("ADI") about bringing his company-issued laptop with him to Iran. This evidence is irrelevant to the charged conduct and any limited probative value it may have is strongly outweighed by the danger that it will confuse the issues, mislead the jury, waste time, and/or cause undue delay.

### LEGAL STANDARD

"Evidence is relevant" where it pertains to a fact that "is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant is it "move[s] the inquiry forward to some degree." *United States v. Criz-Ramoz*, 987 F.3d 27, 42 (1st Cir. 2021). "Relevancy, however, is a condition precedent to admissibility, not an ironclad guarantee of admissibility." *Torres-Arroyo v. Rullan*, 426 F.3d 1, 7 (1st Cir. 2006). Courts may exclude even relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or causing undue delay. Fed. R. Evid. 403. "Thus, even if evidence helps inform disputed issues," the Court may find "its untoward effects . . . to be so weighty that the evidence should be excluded." *Neece*

*v. City of Chicopee*, 106 F.4th 83, 97 (1st Cir. 2024) (internal quotations omitted).  For example, potential for confusing the issues may arise when a "proceeding risk[s] becoming a mini-trial," or when it "could well [] create[] an unwarranted sideshow, drawing attention from the main event." *Id.* at 97 (internal quotations omitted); *see Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998) (Court did not abuse discretion in excluding evidence where "potential for muddling the issues was real").

## FACTUAL BACKGROUND AND DISCUSSION

Sadeghi began working for ADI in March 2019.  Dkt. 149 ¶ 1.  Records show that Sadeghi returned to Iran on multiple occasions over the years.  In July 2021, an employee at ADI informed Sadeghi that she did not believe he should have any issues bringing his ADI-issued laptop to Iran (presumably in response to a question posed to her by Sadeghi that is not recorded in the emails obtained by the government).  Specifically, the employee told Sadeghi by email "if your laptop includes design details for export-controlled products you may want to consider this regardless of your destination.  If you don't have export-controlled documents, or if you can remove those documents, then I would use the laptop you have."  The employee further stated, in response to an email from Sadeghi stating that he did not have such export-controlled documents on his computer, "I agree that you do not need to be concerned."

The government does not intend to call the ADI employee who communicated with Sadeghi in this email exchange in its case in chief.  Nevertheless, the government anticipates that Sadeghi will try to introduce this evidence at trial to attempt to negate his criminal intent as to the charged conduct.

## I.    The Email Is Not Relevant

Sadeghi's belief that he could take his work laptop to Iran and back to the United States is not relevant.  The government does not need to prove "that the defendant has read, was aware of,

or had consulted" the law, here, the International Emergency Economic Powers Act, or IEEPA, in order to demonstrate a defendant's willfulness; it need only show that by reference to facts and circumstances surrounding the case, that the defendant acted knowingly and willfully with the specific intent to violate the law. *United States v. Wu*, 1:08-cr-10386-PBS, ECF 316 at 52-53 (D. Mass. Apr. 19, 2011), *overturned on other grounds*, 711 F.3d 1 (1st Cir. 2013); *see United States v. Murphy*, 852 F.2d 1, 7 (1st Cir. 1988) (holding that government was not required to show defendant read or was aware of export control law to prove willfulness). Stated differently, it is Sadeghi's belief as to the products he is charged with unlawfully exporting and agreeing to unlawfully export—here, ADI parts, some of which could be used in military applications—including the facts and circumstances surrounding those exports—here, export to a company that manufactured a navigation system used in Iranian unmanned aerial vehicles, through a third-party front company —that is relevant to the determination of guilt, regardless of his understanding of what the law may permit in other circumstances.

## II.    Any Minimal Probative Value is Substantially Outweighed Under Rule 403

Even if the email about Sadeghi's ADI work laptop has some limited probative value, it should be excluded pursuant to Federal Rule of Evidence 403 because it serves only to confuse the issues and mislead the jury.

*First*, introduction of the email will require detailed testimony and argument related to particular sections of the IEEPA's regulations that are not at issue in this case, which will distract from the core issues of trial. One of these sections relates to the particulars of exemptions and exceptions to the Iranian Transaction and Sanctions Regulations ("ITSR"). The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations provide exemptions and general licenses that allow for the export of certain products to Iran, including laptops. For

3

example, the regulations provide an exemption for "transactions ordinarily incident to travel," including "importation or exportation of accompanied baggage for personal use." 31 C.F.R. § 560.210(d). Second, the regulations authorize the exportation of "certain software and hardware incident to communications, as well as related services," to Iran, including "laptops, tablets, and personal computing devices, and peripherals for such devices." *Id.* § 560.540(a)(3)(i) (referring to the List of Services, Software, and Hardware Incident to Communications, https://ofac.treasury.gov/media/932886/download?inline (last accessed Feb. 6, 2026)). Sadeghi already has evidence that he can offer to show he knew that certain items could be taken to Iran, because he routinely traveled to Iran, presumably with luggage and other goods. Therefore, evidence that he was aware of another item that could potentially be taken to Iran is of limited probative value.

By contrast, discussion of the exemptions to the ITSR, both the exemptions described above and other exemptions, evidence of how many exemptions there are, the products they cover, and how they have changed over time, will require time to explain to the jury. It will confuse the issues because the jury will have an incomplete picture of the ITSR and its vast and broad sanctions of exports to Iran if the parties focus narrowly on particular exemptions for uncharged products. It will mislead the jury into thinking that it would be reasonable for someone to think that exports to Iran generally were not controlled, which is not the case.[1] It will also waste time discussing

---

[1] If anything, Sadeghi's inquiry into whether he could bring a laptop to Iran would suggest that he understood that by default products related to his work at ADI could not go to Iran without a license, which is understandable given the broad nature of U.S. sanctions imposed on Iran. *Cf. United States v. Nazemzadeh*, Crim. No. 11 CR 5726 L, 2014 WL 310460, at *11 (S.D. Cal. Jan. 28, 2014) (stating that in the Ninth Circuit where "a defendant is a well-educated, intelligent business person accustomed to travel between the United States and Iran, the defendant would reasonably be expected to know of 'embargo and trade sanctions'; and that defendant "was aware that exporting goods to his native country from the United States was likely forbidden, or at least

parts of the IEEPA and ITSR that are not relevant to the charged conduct. None of those topics bear on the question of whether Sadeghi conspired to export or did export U.S.-origin microelectronics equipment, including equipment used for military applications, to an Iranian-company working on military applications, via Switzerland. When considered by the balancing test of Rule 403, this evidence should be precluded as it raises a "significant risk of confusing the issues." *United States v. Brown*, 500 F.3d 48, 58 (1st Cir. 2007).

*Second*, discussion of the email will further confuse the issues because the ADI employee's responses also relate to ADI products that are potentially export-controlled materials on the laptop or accessible by the laptop. Specifically, in the email the employee informs Sadeghi that he should consider removing "export controlled" documents from the laptop, and logging in through a virtual private network while in Iran to do business. Those statements potentially relate to intangible materials that may be export controlled, and which are (again) not the products that Sadeghi is alleged to have conspired to export or re-export, but for which he was made aware of export restrictions. Any minimal probative value that the email may have is outweighed by the confusion that review of the email would cause, because the government would need to explain the additional export controls on intangible objects. The government would also need to describe the intricacies and requirements of other export control laws which are implicated by the email, including the Arms Export Control Act and the International Traffic in Arms Regulations (which prohibit export of "technical data," including schematics that may typically be found on electronic devices such as laptops), and ADI's corporate policy on travel with work devices. This would create undue

---

subject to strict regulations" (quoting *United States v. Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010)).

delay and waste time on issues not central to the case or charged conduct.  Again, on balance, the risk of confusing the issues and causing undue delay is high.  *Brown*, 500 F.3d at 58.

*Third*, the email and evidence that will be introduced as a result of the email, including specifics on the IEEPA, its implementing regulations, exemptions to the regulations, and other export control laws, will confuse the jury by suggesting that the law is too complicated for a layperson to understand.  Again, the government does not need to prove that Sadeghi consulted the IEEPA or even knew of it at all to prove willfulness.  Allowing evidence and argument regarding portions of the IEEPA, ITSR, or other export control laws that are not charged in this case will allow defense to argue that the law is overly complex or complicated, which essentially amounts to a defense of jury nullification.  The defense should not be permitted to offer such evidence or argument, and the Court "may block defense attorneys' attempts to serenade a jury with the siren song of nullification."  *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993).

The Court should preclude argument and evidence related to the laptop email because the email does not bear on the charged conduct and, even if minimally relevant, its probative value is substantially outweighed by the danger of jury confusion, undue delay, misleading the jury, and wasting time.

**CONCLUSION**

WHEREFORE, the government respectfully requests that the Court issue an order precluding evidence and argument regarding Sadeghi's exchange with an employee of his then-employer about bringing his company-issued laptop with him to Iran.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ *Leslie C. Esbrook*
JARED C. DOLAN
ALATHEA E. PORTER
Assistant United States Attorneys

LESLIE C. ESBROOK
Trial Attorney

7

**<u>CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1</u>**

I certify that I filed this document through the CM/ECF system on February 6, 2026, which caused the document to be electronically served on all counsel of record. I hereby certify that the government has conferred with counsel for the defendant, Mahdi Mohammad Sadeghi, who reserves the right to file a response to the government's Motion.

/s/ *Leslie C. Esbrook*
Leslie C. Esbrook
Trial Attorney

Date: February 6, 2026