UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MAHDI MOHAMMAD SADEGHI,<br>a/k/a MOHAMMAD MAHDI SADEGHI<br><br>Defendant. | No. 1:24-CR-10391-IT |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND EVIDENCE ON THE JOINT COMPREHENSIVE PLAN OF ACTION**

The United States of America hereby respectfully moves *in limine* for an order precluding the defense from offering evidence and argument that the Joint Comprehensive Plan of Action ("JCPOA") is in any way a defense to the charged offenses.  This evidence is irrelevant to the charged conduct and any limited probative value it may have is strongly outweighed by the danger that it will confuse the issues, mislead the jury, waste time, and/or cause undue delay.

**LEGAL STANDARD**

"Evidence is relevant" where it pertains to a fact that "is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.  Evidence is relevant is it "move[s] the inquiry forward to some degree."  *United States v. Criz-Ramoz*, 987 F.3d 27, 42 (1st Cir. 2021).  "Relevancy, however, is a condition precedent to admissibility, not an ironclad guarantee of admissibility." *Torres-Arroyo v. Rullan*, 426 F.3d 1, 7 (1st Cir. 2006).  Courts may exclude even relevant evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or causing undue delay.  Fed. R. Evid. 403.  "Thus, even if evidence helps inform disputed issues," the Court may find "its untoward effects . . . to be so weighty that the evidence should be excluded." *Neece v. City of Chicopee*, 106 F.4th 83, 97 (1st Cir. 2024) (internal quotations omitted).  For example,

potential for confusing the issues may arise when a "proceeding risk[s] becoming a mini-trial," or when it "could well [] create[] an unwarranted sideshow, drawing attention from the main event." *Id.* at 97 (internal quotations omitted); *see Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998) (Court did not abuse discretion in excluding evidence where "potential for muddling the issues was real").

## FACTUAL BACKGROUND AND DISCUSSION

The Joint Comprehensive Plan of Action, or JCPOA, was an international agreement between the United States, Iran, and other nations that lifted some sanctions on Iran in exchange for Iranian commitments to curtail their nuclear program. *See Leibovitch v. Islamic Republic of Iran*, 297 F. Supp. 3d 816, 822-23 (N.D. Ill. 2018) (broadly discussing signing of the JCPOA and background). The JCPOA had no effect on the charged conduct because it did <u>not</u> lift the broad primary sanctions promulgated pursuant to the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, prohibiting U.S. persons from engaging in transactions or dealings with Iran or the Government of Iran. It is accordingly irrelevant or alternatively inadmissible under Rule 403's balancing test.

The JCPOA, signed on July 14, 2015, lifted some sanctions on "Implementation Day," or January 16, 2016. *See* E.O. 13716 (Jan. 16, 2016). These sanctions were re-implemented and the United States stopped participating in the JCPOA in late 2018. Specifically, pursuant to Executive Order 13846, the President, "in light of his decision on May 8, 2018 to cease participation in the JCPOA and to re-impose all sanctions lifted or waived in connection with the JCPOA as expeditiously as possible," promulgated a plan to re-impose all sanctions previously lifted on Iran by no later than 180 days from May 8, 2018. *See* E.O. 13846 (Aug. 6, 2018).

In 2016, the JCPOA lifted nuclear-related "secondary sanctions," or sanctions directed toward non-U.S. persons for specified conduct involving Iran that occurs entirely outside of U.S.

jurisdiction. *See* FAQs Relating to the Lifting of Certain U.S. Sanctions Under the Joint Comprehensive Plan of Action (JCPOA) on Implementation Day, at 2, https://ofac.treasury.gov/media/15511/download?inline (last accessed Feb. 5, 2026); *see also id.* at 3 (describing particular sectors for which secondary sanctions against Iran were lifted, including shipments related to the automotive sector, gold and other precious metals, aluminum and steel, energy and petrochemicals, and underwriting and insurance services). The U.S. Government also removed over 400 individuals and entities from Department of the Treasury's Office of Foreign Assets Control ("OFAC")'s Specially Designated Nationals ("SDN") List.[1]  *Id.* at 4. The U.S. Government also issued general licenses or a statement of licensing policy for three narrow categories of activity previously requiring a license from OFAC: export of commercial passenger aircraft; import of Iranian-origin carpets and food, and licenses relating to certain U.S.-owned foreign entities. *Id.* at 4-5.

Notably, the JCPOA did <u>not</u> lift the broad primary sanctions promulgated pursuant to the ITSR prohibiting U.S. persons from engaging in transactions or dealings with Iran or the Government of Iran. *Id.* at 5. Guidance from OFAC, issued on January 16, 2016, stated that "Under section 560.204 of the ITSR, U.S. persons continue to be broadly prohibited from exporting any goods, services, or technology directly or indirectly to Iran, with the exception of

---

[1] OFAC maintains a list of Specially Designated Nationals, or SDNs, who are individuals and entities whose property and interests in property are blocked by OFAC. U.S. persons are prohibited from engaging in transactions with SDNs absent a specific license from OFAC.

transactions that are exempt from regulation or authorized by OFAC." *Id.* at 14; *see id.* at 22, 55 (re-stating that ITSR Sections 560.204 and 560.205 remained in place after Implementation Day).

Any arguments based on the JCPOA are irrelevant and should be precluded. *See* Fed. R. Evid. 402. To the extent those arguments, or JCPOA agreement provisions, have any probative value, they are substantially outweighed by the danger of confusing the issues, misleading the jury by overwhelming the jury with minutia about implementation of legal regulations that have no bearing on the offenses charged, and the timing, winddown, and reversal of that implementation, wasting time, and causing undue delay. The balance of probative value to danger of misleading the jury, delay, and confusion on this evidence weighs in favor of preclusion. *See* Fed. R. Evid. 403.

The government has noticed as an expert OFAC Senior Enforcement Investigations Coordinator Jeremy Krizek, who will, among other things, explain to the jury how sanctions programs work generally, the reasons for the imposition of the Iran Transactions and Sanctions Regulations, and describe the applicable prohibitions regarding transactions subject to the Iran sanctions programs administered by OFAC, that is, 31 C.F.R. §§ 560.203-206, the regulations charged in the Superseding Indictment that prohibit by a U.S. person or from the United States the export or reexport, directly or indirectly, of goods, services, or technology to Iran or the Government of Iran. Further, Mr. Krizek will testify that, from January 2016 through December 16, 2024, it was unlawful to export, reexport, or cause to be exported, directly or indirectly, goods, technology, or services from the United States to Iran, including export or reexport to a person in a third country if the exporter knew or had reason to know that the goods, technology, or services were intended for supply, transshipment, or reexportation to Iran. Mr. Krizek will <u>not</u> offer testimony concerning the terms, meaning, or operation of the JCPOA. The defendant similarly

should be precluded from offering any argument or evidence, including cross-examination of Mr. Krizek, that involves the details of the JCPOA, such as the categories of lifted sanctions, the removal of certain Iranian or Iran-related individuals and entities from OFAC's SDN List, or other topics as set out in the JCPOA. *See United States v. Atilla,* 1:15-cr-00867-RMB, ECF 357 (S.D.N.Y. Nov. 22, 2017) (granting government's motion *in limine* to preclude discussion of JCPOA).

I. **The JCPOA Is Not Relevant**

Defendant Mahdi Sadeghi is charged with conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and ITSR beginning in January 2016, and ending on or about December 16, 2024, or the date of his arrest. *See* Dkt. 149 ¶ 27. While the JCPOA was in effect during a portion of the charged time period, as explained above, the provisions of the ITSR affected by the JCPOA are not relevant to any of the offenses charged in the Superseding Indictment. In other words, and as noted above the government's OFAC witness will testify that during the relevant time period it was unlawful to export, reexport, or cause to be exported, directly or indirectly, goods, technology, or services from the United States to Iran, including export or reexport to a person in a third country if the exporter knew or had reason to know that the goods, technology, or services were intended for supply, transshipment, or reexportation to Iran. Any evidence or argument regarding changes to *other*, uncharged portions of the ITSR do not "move the inquiry forward" to any degree as to whether Sadeghi willfully intended to violate *the unamended portion of the ITSR* (which, in fact, is nearly the *entirety* of the primary sanctions regime on Iran) by agreeing to and by actually sending, or causing to be sent, specific micro-electronic parts, including parts with military applications, to Iran and an Iranian company. *Criz-Ramoz*, 987 F.3d at 42. In fact, knowledge of particular export or sanctions law or their provisions

is not necessary to prove the element of willfulness. *See United States v. Murphy,* 852 F.2d 1, 7 (1st Cir. 1988) (affirming that the government was not required to show that defendant was aware of particular provisions of export control law for willfulness element).

## II.      Any Minimal Probative Value is Substantially Outweighed Under Rule 403

At most, if admitted,[2] evidence that Sadeghi knew about the JCPOA would likely have only minimal probative value. Sadeghi may argue that the JCPOA's lifting of some sanctions tended to negate his *mens rea* to willfully send goods knowing and intending to violate U.S. sanctions law. However, any minimal relevance is outweighed by confusion of the issues, risk of undue delay, waste of time, or misleading the jury. Because the JCPOA did not affect the prohibitions under which Sadeghi has been charged, any discussion related to the JCPOA would unnecessarily confuse and mislead the jury, create delay, and waste time. Fed. R. Evid. 403.

The JCPOA involved myriad executive orders and amendments to regulations promulgated in furtherance of the IEEPA. Explanation of those regulation changes and the meaning of those changes would involve technical description of administrative law that would only serve to confuse the jury about the breadth and scope of the IEEPA, mislead the jury into evaluating parts of sanctions law that are not at issue, and waste time. For example, if Sadeghi wants to introduce evidence on sanctions lifted by the JCPOA to suggest it was reasonable for him to think that he could export micro-electronics to Iran, it would be equally relevant for the government to introduce evidence of the sanctions that were not lifted, and describe those categories in detail. Introduction

---

[2] It is not clear how this evidence would be admissible by anyone other than Sadeghi himself. The government is not aware of communications or other records that demonstrate that Sadeghi reviewed any materials related to the JCPOA or otherwise formed any opinions about the JCPOA. Any other witness' statement as to Sadeghi's knowledge of or beliefs related to the JCPOA would be inadmissible hearsay testimony.

of this evidence will create a mini-trial and cause undue delay not outweighed by its minimal probative value. *Neece*, 106 F.4th at 94; *Williams*, 146 F.3d at 48.

Introduction of evidence and argument on the JCPOA would also cause undue delay, and, to the extent that the discussion may tend to suggest to the jury that the IEEPA is confusing, overly complex, or difficult for any individual to understand the specific prohibitions of, would mislead and confuse the jury. Such a description of the year-by-year changes to irrelevant portions of the IEEPA sanctions regime could also be used to argue that Sadeghi could not comply with the law because of its technical, complex nature, which is a form of jury nullification that is impermissible and irrelevant. *See United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (stating that the Court "may block defense attorneys' attempts to serenade a jury with the siren song of nullification").

This case has charged criminal offenses based on longstanding (and unchanging during the relevant period) provisions of the ITSR. Any minor probative value of JCPOA evidence (of which the government submits there is none) would be substantially outweighed by the dangers of opening the door to introduction of the multinational JCPOA and its multi-pronged regulatory impact. Evidence and argument about the JCPOA should be excluded.

**CONCLUSION**

WHEREFORE, the government respectfully requests that the Court issue an order precluding evidence and argument that the JCPOA is in any way a defense to the charged offenses.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/ *Leslie C. Esbrook*
JARED C. DOLAN
ALATHEA E. PORTER
Assistant United States Attorneys

LESLIE C. ESBROOK
Trial Attorney

8

**<u>CERTIFICATE OF SERVICE AND COMPLIANCE WITH LOCAL RULE 7.1</u>**

I certify that I filed this document through the CM/ECF system on February 6, 2026, which caused the document to be electronically served on all counsel of record. I hereby certify that the government has conferred with counsel for the defendant, Mahdi Mohammad Sadeghi, who reserves the right to file a response to the government's Motion.

/s/ *Leslie C. Esbrook*

Leslie C. Esbrook
Trial Attorney

Date: February 6, 2026

9